CULPEPPER, Judge.
This is a suit for damages for personal injuries arising out of an automobile accident. The plaintiff appellant is Marjorie E. Smith, appearing individually and as natural tutrix of her minor son, Bobby Ellis, 18 years of age, one of the injured parties. The defendant, American Indemnity Company, is the liability insurer of the vehicle which caused the accident. The district judge awarded $2,000 for general damages and loss of earnings of Bobby Ellis, plus $470.15 medical expenses incurred on his behalf. Plaintiff appealed.
The sole issue on appeal is whether the award of $2,000 for Bobby Ellis is inadequate.
The general facts are that on February 19, 1965 Bobby Ellis was a passenger in a delivery truck which was struck at an intersection by the vehicle of defendant’s insured. It was a violent collision. The driver of the delivery truck was killed. Bobby Ellis was rendered unconscious by a severe blow to the head but received no other injury except a small laceration on the knee. He was taken unconscious to a hospital where he was seen in the emergency room by Dr. Frank Pearce, III, a general surgeon.
Dr. Pearce diagnosed a cerebral concussion and instituted treatment for that condition. Ellis remained in a completely comatose condition for three days, i. e., until February 21, after which time he was in a semi-comatose condition for another five days. Dr. Pearce discharge Ellis from the hospital on March 4, finding no residuals of the accident except weakness of grip in the left hand and a slight “disturbance in his walking.” Plowever, when he checked-Ellis again on March 18, he found he “was doing very well except the amnesia from. the wreck, he had good muscular tone, he had a strong grip in the hand that had ' previously been somewhat disturbed, his locomotion at that time was all right and he ■ was discharged.”
Dr. Davidson H. Texada, Jr., a diplómate of the American Board of Psychiatry and Neurology, who has practiced this specialty since 1948, examined Bobby Ellis on May 18, 1965, which was about three months after the accident. Ellis complained of headaches, trembling of his left leg, apathy, and poor memory. On the basis of the patient’s history and an examination, including an electroencephalogram to discover any possible brain damage, Dr. Texada reached the following conclusion:
“I found the patient’s memory actually to be fairly good with no evidence of impairment of memory except the time surrounding the accident, he did complain of extreme drowsiness, I found no other particular mental changes, his *105 neurological examination was negative and his EEG was normal.”
Dr. Texada explained that an electroencephalogram will usually show a large brain defect in about 75 per cent of the cases.
After his examination of May 18, 1965, Dr. Texada obtained some additional history from Ellis’s mother and a friend of the family as to Ellis’s continued apathy, poor memory and irritability. On December 18, 1965 Dr. Texada rendered a report in which he said:
“ ‘in view of the lack of evidence of any significant brain tissue damage, however, I would feel that there would gradually be improvement although the exact amount of residual difficulty would be hard to predict.’ ”
On the morning of the trial of this case, February 10, 1966, Ellis was again examined by Dr. Pearce. This examination consisted of questions and answers to Ellis and taking additional history from Ellis’s mother that he was apathetic, irritable and “hollered a lot”. No other tests were given. Dr. Pearce testified that the most likely diagnosis is “an insidious chronic subdural hema-toma, perhaps.” The doctor stated that the presence of such a hematoma in the brain could be definitely diagnosed by an angio-gram, i. e., putting dye in the arteries and taking x-ray films, but no such test was performed.
The trial judge, who saw and heard all of these witnesses testify in open court, made the following evaluation thereof:
“The next matter for decision is the amount to be awarded for the injuries to Bobby Ellis. This boy was seen by Dr. Frank Pearce, Jr. who treated him and Dr. Davidson Texada who examined him at the request of the plaintiff’s attorneys. Dr. Pearce, the treating physician, stated one month after the accident that the minor was well. Dr. T.exada was of the opinion that the plaintiff had suffered a severe head injury but that he was not suffering any serious impairment at the-time he examined him.
“Dr. Pearce saw Ellis but 20 minutes on the day of the trial in plaintiff’s attorney’s office and from this casual examination (?) concludes that his previous opinion is completely erroneous and that the man is suffering serious permanent residual disability. This testimony was far short of being impressive and not the kind of testimony upon which an award should be based.”
Although, as counsel for plaintiff points out, Dr. Pearce’s examination of Ellis on the morning of the trial may have lasted longer than 20 minutes, we certainly can find no manifest error in the trial judge’s evaluation of the expert and lay testimony. We note particularly 'that Dr. Pearce is a general surgeon with three years of experience in practice, although he says that during his residence he did a considerable amount of nuero-surgery. But, the issue here, that is whether Ellis has suffered any permanent brain damage, lies within the specialty of Dr. Texada, a highly qualified neurologist and member of the American Board of Psychiatry and Neurology. Dr. Texada found no residual brain damage. Clearly, his opinion is entitled to greater weight than that of Dr. Pearce.
We find no manifest error in the trial judge’s conclusion that the evidence is not sufficient to show any permanent brain damage. Hence, the award of $2,000 is within the range of the lower court’s great discretion as to the quantum of damages. Ballard et al. v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.